Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1174 | **DATE** | 6/28/2001 |
| **CASE TITLE** | R.J. Reynolds et al vs. Premium Tobacco Stores et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Reynolds' motion (Doc 203-1) to strike certain of Cigarettes Cheaper!'s affirmative defenses is granted in part and denied in part. The first, second, third and sixth affirmative defenses are stricken, with prejudice, from Cigarettes Cheaper!'s Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 29 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 221 |
| | Mail AO 450 form. | CD-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN 28 PM 12: 57 | date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R.J. REYNOLDS TOBACCO COMPANY and GMB, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | 99 C 1174 |
| PREMIUM TOBACCO STORES, INC., d/b/a CIGARETTES CHEAPER; C.E.I INTERNATIONAL, INC.; d/b/a/ CROWN ENERGY, INC.; d/b/a C.E.I DISTRIBUTORS TOBACCO DIVISION; GENOVA TRADING, INC.; VARIOUS JOHN DOE DISTRIBUTORS; and VARIOUS DOE RETAILERS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Plaintiffs' motion to strike certain of Defendant Cigarettes Cheaper!'s affirmative defenses. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

On February 23, 1999, Plaintiffs R.J. Reynolds Tobacco Company and GMB, Inc. (collectively, "Reynolds") filed this action against Defendant Cigarettes Cheaper! ("CC") and other cigarette sellers and distributors alleging violations of the Lanham

Act and Illinois law in connection with Defendants' domestic sale of Salem, Winston, and Camel brand cigarettes manufactured by Reynolds for sale outside the United States. CC filed an Answer and Counterclaim which included nine affirmative defenses. Reynolds subsequently filed three amended pleadings, culminating in the March 21, 2001, Third Amended Complaint. On April 10, 2001, CC answered the Third Amended Complaint (hereinafter, the "Complaint") and reasserted the original nine affirmative defenses. Reynolds has now moved to strike five of the nine affirmative defenses, arguing that it is impossible for CC to prove a set of facts in support of those defenses that would defeat the claims set forth in the Complaint.

## LEGAL STANDARD

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses are disfavored and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). Thus "an affirmative defense will not be struck if it is sufficient as a matter of law or if it presents questions

of law or fact." Heller Financial v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).

Applying a test first set forth in Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 737 (N.D. Ill. 1982), courts in the Northern District of Illinois will strike an affirmative defense as legally insufficient if "it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint." See, e.g., Franklin Capital Corp. v. Baker & Taylor Entertainment, Inc., 2000 WL 1222043, at *2 (N.D. Ill. Aug. 22, 2000); All EMS, Inc. v. Southland Corp., 1997 WL 392330, at *2-3 (N.D. Ill. Jul 08, 1997); Videojet Sys. Int'l, Inc. v. Inkjet, Inc., 1997 WL 124259, at *4 (N.D. Ill. Mar. 17, 1997); Cohn v. Taco Bell Corp., 1995 WL 247996, at *1 (N.D. Ill. Apr 24, 1995). Affirmative defenses challenged on this basis are tested under a standard identical to that applied in motions to dismiss under Rule 12(b)(6). Bobbitt, 532 F. Supp. at 737. Thus we must construe the affirmative defenses in the light most favorable to the defendant and accept all well-pleaded facts and allegations in the affirmative defenses as true. Cf. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). With these principles in mind, we turn to the merits of Plaintiffs' motion.

## DISCUSSION

## I. First Affirmative Defense – Unclean Hands with Respect to Re-Imported Cigarettes

CC's first affirmative defense alleges that Reynolds' claims should be denied pursuant to the equitable doctrine of unclean hands. In particular, CC claims that Reynolds has "misrepresented to the public material attributes concerning the origin, nature, source and ingredients of their foreign-sale cigarettes," including "(a) statements on packaging for so-called 'foreign sale only' Winston cigarettes representing that such cigarettes are 'American Blend' products when (according to plaintiffs' Third Amended Complaint) they are not, since such cigarettes purportedly contain additives unlike the domestic 'No Bull' Winstons; (b) use of plaintiffs' 'new look' Winston trade dress on so-called 'foreign sale only' cigarettes that (according to plaintiffs' Third Amended Complaint) contain additives; and (c) other representations and packaging practices likely to confuse or mislead consumers and resellers of the products as to the nature, source and attributes of what they are purchasing and reselling." CC further alleges that such misrepresentations have or are likely to have misled, confused, and deceived both the American public[1] and CC itself.

---

[1] While the affirmative defense is ambiguous on this point, footnote 5 to CC's memorandum in opposition to the motion to strike makes clear that the defense is concerned only with harm caused to consumers in the United States.

- 4 -

In appropriate cases, "unclean hands can constitute a bar to some or all of the relief sought for trademark infringement or unfair competition." J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 31.47 (5th ed. 2001) ("McCarthy on Trademarks"). Specifically, "[i]ntentional misrepresentations as to the origin, nature or ingredients of a product which are material and which deceive the public are grounds for denying relief for trademark infringement or unfair competition where they are directly connected to the subject matter of the suit." McCarthy on Trademarks § 31.47. Where, on the other hand, the unclean hands are only collaterally related to the trademark that is the subject of the lawsuit, the defense does not operate to bar suit for infringement. See Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15, 65 S. Ct. 993 (1945); McDonalds v. Hardee's Food Systems, Inc., 195 U.S.P.Q. 63, 64 (N.D. Ill. 1976).

Applying these general principles, courts have almost unanimously required a party seeking to use the unclean hands defense to demonstrate that the trademark itself, as opposed to advertising or promotion of the trademarked product, was deceptive. See McCarthy on Trademarks § 31:51; Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837 (9th Cir. 1987); Russian Kurier, Inc. v. Russian American Kurier, Inc., 899 F. Supp. 1204 (S.D.N.Y. 1995); Nester's Map & Guide Corp. v. Hagstrom Map Co., 760 F. Supp. 36 (E.D.N.Y. 1991). Cf. Worden v. California Fig Syrup Co., 187

U.S. 516, 23 S. Ct. 161 (1903) (refusing to enforce trademark "Syrup of Figs" as applied to laxative containing no figs). CC does not allege that the trademarks it is accused of infringing – WINSTON, SALEM, and CAMEL – are themselves deceptive. Rather it claims that the packaging of the cigarettes sold under these marks is misleading, in that it causes consumers to believe that the cigarettes are the same as those Reynolds manufactures for domestic sale when, according to Reynolds, they are materially different.

Any deception inherent in the packaging or trade dress of Reynolds' "foreign sale only" cigarettes is collateral to the infringement claims brought in this lawsuit and may not therefore support a defense of unclean hands. Furthermore, CC is barred by our June 30, 1999, Memorandum Opinion from arguing that Reynolds' packaging and practices have misled consumers in the United States into believing that the re-imported cigarettes sold by CC are the same as those manufactured by Reynolds for domestic sale. In that opinion, we recognized that "the potential for consumer confusion is extremely high when a product catering to the indigenous conditions of a foreign country competes domestically against a physically different product that bears the same name." See Mem. Op. at 9 (quoting Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 639 (1st Cir. 1992)). This confusion, we held, is

caused not by the manufacturer but by the party who resells the foreign-version goods in the domestic market. Id.

The first affirmative defense simply raises this issue in a different format, without adding anything that would alter the conclusions reached in our June 30 Memorandum Opinion. CC makes much of the different lens through which we view the facts on Reynolds' motion to strike. However, our conclusion that CC should bear the responsibility for any confusion caused by its re-importation of cigarettes bearing marks used on Reynolds' domestic-version products was a legal one. CC has not pointed to any fact or allegation which, if read in the light most favorable to CC, would shift the blame for such confusion from CC to Reynolds. For this reason, the first affirmative defense must be stricken.

## II. Second Affirmative Defense – Unclean Hands with Respect to Domestic Products

### A. Misleading the public

CC's second affirmative defense raises an unclean hands argument with respect to Reynolds' "No Bull" advertising campaign. CC alleges that the "No Bull" campaign, of which the Winston "new look" trade dress and trademarks were integral components, gave consumers the mistaken impression that the advertised absence of additives in the "new look" Winstons made smoking them safer. As a result, CC claims, "the consuming public was...misled into associating plaintiffs' 'new look'

trademarks and trade dress with attributes and values that the products lacked." CC argues that this deception amounts to unclean hands with respect to the Winston "new look" trademarks and trade dress and seeks denial of relief to Reynolds on this basis.

As noted above, CC does not allege in its second affirmative defense that the WINSTON trademark is inherently deceptive. Rather, it points to other allegedly inequitable conduct related to the products sold under that mark. As discussed in Part I, above, such conduct is collateral to the subject matter of a trademark infringement suit and cannot support the affirmative defense of unclean hands. Accordingly, the motion to strike is granted with respect to the allegations of deception in connection with Reynolds' "No Bull" advertising campaign.

## B. Antitrust violations

CC's second affirmative defense also alleges that "RJR has engaged in conduct that violates both the Sherman Act and the Robinson-Patman Act, and, as a consequence of such conduct, CC was forced to sell certain brand styles of RJR cigarettes which RJR apparently intended for sale outside of the United States." Courts have recognized that antitrust violations in which the trademark itself has been "the basic and fundamental vehicle required and used to accomplish the violation" may constitute an unclean hands defense to an action for trademark infringement. See Carl Zeiss Stiftung v. N.E.B. Carl Zeiss, Jena, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969)

(quoted in Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1337 (7th Cir. 1977) and Juno Online Services v. Juno Lighting, Inc., 979 F. Supp. 684, 688 (N.D. Ill. 1997)). See also Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 273 (S.D.N.Y. 1999) (allowing trademark misuse defense where evidence "suggests the possibility that Plaintiffs are directly attempting to misuse their trademarks for anticompetitive purposes"); Phi Delta Theta Fraternity v. J.A. Buchroeder & Co., 251 F. Supp. 968 (W.D. Mo. 1966) (registration of insignias as trademarks for the purpose of unlawfully eliminating competition may justify application of antitrust misuse defense). "[I]t is not enough merely to prove that merchandise bearing a trademark, however valuable the trademark, has been used in furtherance of antitrust violations." Zeiss, 298 F. Supp. at 1315. Rather, the party invoking the defense must "demonstrate that the trademark, as distinguished from collateral activities with respect to goods bearing the trademark, was itself being used as the prime and effective instrument to effectuate the antitrust activity." Id. at 1314. The burden of establishing such antitrust misuse is a heavy one, but it is not insuperable. Id.

CC does not explicitly allege in its third affirmative defense that Reynolds used its trademarks to accomplish antitrust violations. It merely claims that Reynolds engaged in conduct which violated the antitrust laws, an allegation which, as noted

above, is insufficient to justify application of the antitrust misuse defense to a claim of trademark infringement. Nor does CC draw the necessary connections in its brief in opposition to the motion to strike. In those papers, CC simply elaborates on Reynolds' anticompetitive conduct, alleging that the cigarette manufacturer conspired with others to refuse to sell its trademarked products to CC and to refuse CC critical promotional support for such products while intentionally providing it to CC's competitors. As the Southern District of New York recognized in its seminal opinion in <u>Carl Zeiss Stiftung v. N.E.B. Carl Zeiss, Jena</u>, <u>supra</u>, such garden-variety antitrust allegations, even if they pertain to products bearing trademarks, cannot be all that is required to establish the antitrust misuse defense. If they were, "any antitrust violation in the distribution of [merchandise bearing a trademark] would result in a forfeiture of the trademark with a consequent unnecessary frustration of the policy underlying trademark enforcement."

CC cites <u>Estee Lauder, Inc. v. Fragrance Counter, Inc.</u>, 189 F.R.D. 269, 273 (S.D.N.Y. 1999), for the proposition that its antitrust misuse defense must survive so long as there is a possibility that Reynolds "has attempted to block CC's participation in the sale of [Reynolds'] products." However in <u>Estee Lauder</u>, as in <u>Zeiss</u> and <u>Helene Curtis</u>, the court required a showing that the plaintiffs were "directly attempting to use their marks for anticompetitive purposes." CC has made no such allegation. Its contention that Reynolds has engaged in conduct that violates the antitrust laws in

connection with products bearing its trademarks is insufficient to support the antitrust misuse defense. Consequently, this portion of CC's second affirmative defense is stricken.

## III. Third Affirmative Defense – Nominative Fair Use

In its third affirmative defense, CC alleges that it engaged only in "limited identifying use of [Reynolds' trademarks] by reselling plaintiffs' branded cigarettes under plaintiffs' own trademarks, in their original packaging and trade dress" and that such "nominative fair use" is protected from prosecution as trademark infringement. The nominative fair use doctrine provides that "[a] use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services, is not an infringement so long as there is no likelihood of confusion." McCarthy on Trademarks § 23:11. The defense is typically employed where two products are being compared for advertising or evaluation purposes. In New Kids on the Block v. News America Publishing, Inc., 971 F.2d 302 (9th Cir. 1992), for example, USA Today and another newspaper conducted a public opinion poll in which they asked readers to choose their favorite music group from among five choices, including New Kids on the Block. To participate in the survey, readers called a 900 number and paid a charge. The music group later sued, alleging unauthorized commercial use of their trademarked

name. In declaring the newspapers' use of the music group's name a permissible "nominative fair use," the Ninth Circuit developed a three-part test:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. Id. at 308.

In Pebble Beach Co. v. Tour 18 I, Ltd., 155 F.3d 526 (1998), the Fifth Circuit applied the New Kids on the Block test in disallowing the nominative fair use defense. Tour 18 created and operated a public golf course in Humble, Texas, using holes copied from famous golf courses across the country. Certain holes were identified by the trademarked names of the courses from which they were copied. The owners of several of the well-known courses sued for trademark infringement, and Tour 18 raised, *inter alia,* the nominative use defense. The Fifth Circuit affirmed the district court's finding that Tour 18's use of the famous courses' marks was not merely nominative. The court recognized that "one can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." Id. at 545. However it noted that "[b]y definition, the defendant cannot use the mark to identify its own goods because this would not be a nominative use, and it would also suggest affiliation, sponsorship, or endorsement." Id. at 546. Because the district court had properly found that Tour 18 had used the plaintiffs' marks to refer to

its own products, the Fifth Circuit denied Tour 18 the shield of nominative fair use. Id.

CC's use of Reynolds' trademarks on the re-imported cigarettes it sells is not the type of "nominative" use which the Fifth and Ninth Circuits have described as being "outside the strictures of trademark law." Pebble Beach, 155 F.3d at 546. As the cases discussed above make clear, CC could not prevail on this defense unless it could show that consumers are unlikely to believe that Reynolds sponsored, endorsed, approved of, or was affiliated with the re-imported cigarettes. This is not CC's position. Indeed, CC takes the opposite tack. It claims that the cigarettes were *in fact* manufactured by Reynolds and did not materially differ from those sold domestically by Reynolds under the trademarks at issue. According to CC, there is no likelihood of confusion not because customers are unlikely to associate the re-imported cigarettes with Reynolds and its trademarks but because in making such an association the customers would be correct. If proved, this may constitute a defense to Reynolds' trademark action, but it does not constitute the nominative fair use defense.

In sum, CC cannot show, consistent with the allegations in its answer and affirmative defenses, that its sale of cigarettes bearing Reynolds' trademarks is unlikely to suggest Reynolds' sponsorship, endorsement, or approval of, or affiliation with, those cigarettes. This case is analogous to one in which the defendant labels its own

goods with the plaintiff's mark. As the Fifth Circuit pointed out, such use "[b]y definition...suggests affiliation, sponsorship, or endorsement." We therefore strike CC's third affirmative defense as legally insufficient.

**IV. Sixth Affirmative Defense – First Sale Doctrine**

In its sixth affirmative defense, CC alleges that the first sale doctrine bars each of the plaintiffs' claims because "CC has simply resold plaintiffs' products with their original trademarks intact." The holding of our June 30, 1999 Memorandum Opinion and Order precludes CC from raising this defense. In that ruling, we rejected CC's argument that the first sale doctrine, which immunizes the buyer of a trademarked product against trademark liability for the resale of that product under the original mark, barred Reynolds' infringement claims. Reynolds' infringement claims depend on a showing that the "foreign sale only" cigarettes CC sells domestically are materially different than those manufactured by Reynolds for sale in the U.S. To the extent that Reynolds is able to demonstrate this, the "foreign sale only" cigarettes are not "genuine" and the first sale doctrine does not apply. See id.; NEC Electronics v. CAL Circuit Abco, 810 F.2d 1506, 1509 (9th Cir. 1987); McCarthy on Trademarks, § 25:41. If Reynolds is unable to demonstrate material differences, then its trademark claims cannot succeed, and the first sale defense is superfluous. For these reasons, the motion to strike CC's sixth affirmative defense is granted.

## V. Seventh Affirmative Defense – Distribution Without Adequate Control and Monitoring

CC's seventh affirmative defense alleges that Reynolds has failed to take adequate measures to restrict or police the re-importation of its products into the United States such that CC and others have been lulled into the belief that their sale of the re-imported cigarettes was not objectionable to Reynolds. CC contends that Reynolds' negligence in this respect caused the injuries for which it is seeking recovery against CC. It further alleges that Reynolds has actively or passively participated in the smuggling of its foreign-sale only cigarettes into the United States for domestic resale. Finally, the seventh affirmative defense alleges that Reynolds has failed to police the quality of its domestic-sale cigarettes as they are resold by retail outlets throughout the United States.

Reynolds raises two challenges to this defense. It first moves to strike on the ground that the defense is "mere surplusage," as it purportedly raises matters already at issue under a denial. Courts in this district have recognized that even where an affirmative defense merely raises matters that could be or have been raised by a denial of the facts alleged in the complaint, the defense should not be stricken "if there is any real doubt about the defendant's right, under his denial, to offer proof of the matters." Bobbitt, 532 F. Supp. at 736 (quoting 2A Moore's Federal Practice P 8.27(3) at 8-251). Courts have considered requests to strike such defenses to be "pedantic," because even

a successful plaintiff "must still face the denials which, it says, make the affirmative defense redundant." Van Schouwen v. Connaught Corp., 782 F. Supp. 1240, 1246 (N.D. Ill. 1991). In our view these courts have properly applied the rule that "an affirmative defense will not be struck if it is sufficient as a matter of law or if it presents questions of law or fact." Heller Financial, 883 F.2d at 1294. We therefore follow their lead and deny Reynolds' motion to strike the seventh affirmative defense as surplusage.

Reynolds also argues that CC has failed to allege a sufficient nexus between the illegal activity and the relations between the parties in the controversy before the Court. See Universal Mfg. Co. v. Douglas Press, Inc., 770 F. Supp. 434, 436 (N.D. Ill. 1991) (citing Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir. 1979) (wrongful acts must "affect the equitable relations between the parties in respect of something brought before the court for adjudication")). CC acknowledges that such a nexus is necessary but asserts that, if proved, RJR's failure to police the quality of its products and its involvement in the smuggling of "foreign sale only" cigarettes into the United States would render RJR partially responsible for the trademark dilution and customer confusion of which it accuses CC. We agree. If Reynolds' failure to control the quality of its domestic sale cigarettes led to dilution of its trademarks, CC's responsibility for such dilution would be diminished. Similarly, if Reynolds

acquiesced or participated in the re-importation of its "foreign sale only" cigarettes into the United States, its ability to recover against CC for selling those cigarettes on the domestic market could suffer. Accordingly, we cannot find that the seventh affirmative defense raises no question of law or fact, and deny the motion to strike on this basis.

## CONCLUSION

For the foregoing reasons, Reynolds' motion to strike certain of Cigarettes Cheaper!'s affirmative defenses is granted in part and denied in part. The first, second, third, and sixth affirmative defenses are stricken, with prejudice, from Cigarettes Cheaper!'s Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: June 28, 2001