Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1174 | **DATE** | 10/16/2001 |
| **CASE TITLE** | R J Reynolds Tobacco, et al. Vs. Premium Tobacco, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 10/22/2001 at 10:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order granting R J Reynolds' motion seeking the return of privileged document [227-1] and denying Cigarettes Cheaper's motion to strike declaration of Michael Buckler [228-1], with the following modifications: (1) Cigarettes Cheaper may maintain one copy of the Buckler document for the purpose of the bringing of an appeal to Judge Kocoras of the memorandum opinion and order; If no appeal is timely made, Cigarettes Cheaper shall turn the copy of the document over to R J Reynolds. (2) Cigarettes Cheaper may destroy any copies that have Cigarettes Cheaper's work product on them, provided that Cigarettes Cheaper must advise R J Reynolds in writing of the number of copies that have been destroyed, and fact of their destruction. Status continued for 10/22/01 at 10:30 a.m. with respect to outstanding matters raised today in court. The Court adopts joint proposed expert discovery schedule as set out on the reverse side. /s/ Janet Brown

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | OCT 2 4 2001 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 244 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | 01 OCT 24 AM 9:16 | /s/ docketing deputy initials | |
| | Mail AO 450 form. | | 10/16/20016 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| mm | courtroom deputy's initials | | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R. J. REYNOLDS TOBACCO COMPANY and GMB, INC.,<br>Plaintiffs,<br><br>v.<br><br>PREMIUM TOBACCO STORES, INC., d/b/a Cigarettes Cheaper, et al.<br>Defendants.<br><br>CIGARETTES CHEAPER!, formerly known as PREMIUM TOBACCO STORES, INC.,<br>Counter-Plaintiff,<br><br>v.<br><br>R. J. REYNOLDS TOBACCO COMPANY,<br>Counter-Defendant. | Cause No. 99 C 1174<br><br>Judge Charles P. Kocoras<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff-counterdefendant R. J. Reynolds Tobacco Company ("RJR") has filed a Motion Seeking Return of Privileged Document [Dkt # 227] and defendant-counterplaintiff Cigarettes Cheaper! ("CC") has filed a Motion to Strike Declaration of Michael Buckler [Dkt # 228] seeking an order striking declaration that RJR attached to its motion. For the reasons set out herein, RJR's motion is GRANTED and CC's motion is DENIED.

### PROCEDURAL BACKGROUND

This case has been referred to the Magistrate Judge for ruling on discovery motions. [Dkt

#73.] On July 19, 2001, RJR moved for an order compelling CC to return a document that RJR said was protected by attorney-client privilege and had been inadvertently produced in discovery. RJR stated that the document, Bates numbered RJR-RP-156785 and also 51958-348 (the "Buckler Document"), consists of a single page of handwritten notes taken by Michael Lee Buckler, then RJR's National Manager – Trade Marketing, of a meeting that he had with Michael Johnson, a senior in-house attorney for RJR. RJR attached Mr. Buckler's declaration to its motion. CC filed a memorandum in opposition, and moved to strike Mr. Buckler's declaration on the ground that it was inconsistent with Mr. Buckler's previous deposition testimony. The Court ordered RJR to produce Mr. Buckler (who is still employed by RJR) for a short deposition limited to the subject of his declaration. (Minute Order dated July 24, 2001 [Dkt # 229]). The Court received additional submissions from both parties following that deposition, and heard oral argument.

## BACKGROUND FACTS

This lawsuit involves claims by RJR that CC has infringed RJR's trademark and competed unfairly by selling in the United States cigarettes that RJR produces for foreign markets, and counterclaims by CC that RJR has violated the antitrust laws by excluding CC from various retail promotional programs offered by RJR to other cigarette retailers. This is a high-stakes litigation involving extensive discovery. The parties have exchanged literally hundreds of thousands of "documents" in the broad sense in which that word is used in Fed. R. Civ. P. 34(a). These have included "documents" produced not in paper format but as part of a compilation of a large number of documents scanned on to the medium of a compact disc, as well as data bases that organize information from documents and other information sources. Scores of depositions have been taken

around the country. *See* Joint Motion to Extend Time to Complete Fact Discovery [Dkt # 132]; Joint Status Report and Motion For Leave to Complete Noticed Discovery [Dkt # 190].

The Buckler Document was produced to CC in as one of hundreds of thousands of RJR documents that had also been produced by RJR in a separate lawsuit, *R. J. Reynolds Tobacco Co., v. Philip Morris, Inc.*, 1999 CV 185, 207 and 232 (the "*Philip Morris* Lawsuit"), pending in the Middle District of North Carolina. CC had originally requested that RJR produce all documents that RJR had produced in the *Philip Morris* Lawsuit, but ultimately withdrew that request because the number of documents was so voluminous. (Letter of Mark Schroeder to Eric Berlin, Aug. 14, 2000, CC's Mot. to Strike RJR's Aff. Defenses, Ex. C.) Mark Stafford, one of RJR's attorneys in the *Philip Morris* Lawsuit, submitted his declaration describing the steps taken by RJR's lawyers in that case to extract privileged documents from approximately 2 million of pages of documents produced in discovery in that case. (Declaration of Mark A. Stafford, RJR's Reply Mem., Ex. N.) He stated that the Buckler Document was inadvertently produced because it was a single page embedded within another 207-page document. (*Id.* ¶ 2.)[1] By September 2000, approximately 385,000 pages of documents from the *Philip Morris* Lawsuit had been produced in hard copy for CC and were Bates stamped with a "RJR-RP" number. (Apparently, the Buckler Document was among those because it bears a "RJR-RP" Bates number.) In September 2000, RJR produced 249 compact discs containing 750,000 pages of documents produced in the *Philip Morris* Lawsuit, which included the previously produced 350,000 documents. (Letter of Mark Schroeder to Eric Berlin, Sept. 25, 2000,

---

[1] On August 14, 2001, counsel for Philip Morris in that lawsuit returned the compact disc containing the Buckler Document to RJR upon the request by RJR's counsel, pursuant to the protective order entered in that case. Philip Morris' counsel did not concede that the document is privileged. (Letter from Amy Ralph Mudge to Mark Stafford, Aug. 14, 2001.)

3

CC's Mot. to Strike RJR's Aff. Defenses, Ex. A.)

By the time that Latham & Watkins was given leave to appear as counsel for CC in this case on the antitrust issues (December 2000), CC's counsel had identified the Buckler Document as one of a number of "Hot Documents." (Declaration of James G. Hunter, Jr. ¶ 14, CC's Supp. Mem., Ex. 8.) CC's counsel states that CC relied on the Buckler Document in preparing, signing and filing CC's [Third] Amended Counterclaim not only with regard to the realleged Robinson-Patman price discrimination allegations but also with respect to the conspiracy allegations under Section 1 of the Sherman Act. (*Id.* ¶ 15.)

On March 23, 2001, CC took the deposition of Barbara Simkins, an RJR employee. The Buckler Document was identified as Simkins Dep. Ex. 102. Ms. Simkins did not recognize the handwriting and had no recollection about the document or the subject matter discussed. (Simkins Dep. at 454, CC's Mem. Opp'n, Ex. 2.) The following colloquy ensued:

> RJR's counsel: And for the record, counsel, I'm just--it may very well be that this is a privileged document that was inadvertently produced. There is no foundation that Ms. Simkins has seen this or is aware of any of the subject matters of these issues being raised here, and what further questioning do you intend to do on it?
>
> CC's counsel: I'm going to ask her about the next burger point.. . .
>
> RJR's counsel: Yes, and I'm just concerned that this does--this appears to be a--I can't tell whether this is a reference to something that the legal department has done and I don't want to be in a position where there is some argument that I'm impairing my privilege position or my rights to seek return of this by allowing Ms. Simkins to answer any of the questions on this.
>
> CC's counsel: First of all, I just asked her if she saw it.

(*Id.* at 456-57.) There was a break when RJR's counsel consulted Ms. Simkins. Back on the record, the colloquy continued:

4

> RJR's counsel: Mr. Hunter, Ms. Simkins will testify if asked that as to the second burger dot or bullet point that you just identified, she has neither seen this nor is familiar with any discussions on the topic. And I will allow questions on that as long as you're not going to contend that by my allowing it I have somehow prejudiced my ability to seek return of this or somehow waived any privilege.
>
> CC's counsel: Well, I will solve your problem more easily. I will withdraw the pending question given your representation, but I will ask her a different one wholly apart from the document.
>
> . . .
>
> RJR's counsel: And for the record, subject to further investigation on what these documents are in the circumstances, we will – I am making a formal request for its return based on inadvertent production of privileged material.
>
> CC's counsel: I don't believe you can in good faith do that until you investigate and determine that you know where it came from and who it was written by and that it was, in fact, a privileged document. And I believe it's not. So for the moment, I'm going to deny it, but without prejudice to your right to come back and raise it with some more information.
>
> RJR's counsel: And I didn't want to be in a position where someone was accusing me of sitting on some rights. And I disagree with the good faith point, but lets go on.
>
> CC's counsel: Well, I didn't mean to accuse you of bad faith. What I meant is I think you need to know more before you ask for it back. And certainly I would need to know more before I could agree that you could have it back.

(Simkins Dep. at 457-59.) The deposition continued on other topics.

On April 11, 2001, CC's counsel took the deposition of Andrew Schindler, RJR's Chief Executive Officer. The Buckler Document was marked as Schindler Deposition Exhibit 57. Mr. Schindler did not recognize the document or know anything about it. (Schindler Dep. at 272-73, CC's Mem. Opp'n, Ex. 3.)

On June 6, 2001, CC's counsel took the deposition of Mr. Buckler. The Buckler Document was marked as Buckler Exhibit 1. Mr. Buckler testified that the handwriting was his. RJR's counsel

5

had a discussion off the record with Mr. Buckler, and, back on the record, stated that the Buckler Document was privileged, requested the return of the document, and instructed Mr. Buckler not to answer questions about the substance of the document. (Buckler Dep. at 20-21, RJR's Mot., Ex. C.) Counsel permitted Mr. Buckler to answer questions about the preparation of the document. Mr. Buckler testified that he believed the document to be notes of a meeting between himself and Mr. Johnson while Mr. Buckler was at RJR's Winston-Salem office. He did not recall the date of the meeting, whether anyone else was present, or the substance or purpose of the conversation. (*Id.* at 22-25.) In response to questions from RJR's counsel, Mr. Buckler testified that from time to time in the period of 1993-1998 he sought Mr. Johnson's legal advice in the preparation of retail agreements used by RJR in sales to contract with retailers. He testified that he did not consult with Mr. Johnson regarding business issues. (*Id.* at 255-56.)

On June 8, 2001, RJR's counsel wrote to CC's counsel requesting the return of the Buckler Document. (RJR's Mot., Ex. D.) CC's counsel refused to return the document on the ground that RJR had not demonstrated that it was privileged. (RJR's Mot., Exs. E, F and G.) RJR subsequently filed the present motion, attaching Mr. Buckler's declaration in which he stated, in essence, the following. From 1993 to 1995, he was RJR's National Manager-Trade Marketing, and from 1996 to 1998, he worked as a Senior Manager of Trade Marketing. Both positions were in Winston-Salem, North Carolina. From time to time he consulted with Michael Johnson, one of RJR's senior in-house counsel, who was also located in RJR's Winston-Salem office, for legal advice regarding contractual issues relating to RJR's trade marketing programs. After his deposition, Mr. Buckler reviewed certain documents that refreshed his recollection about the Buckler Document. With his refreshed recollection, he confirmed that the Buckler Document contains his handwritten notes taken

during an in-person conversation with Mr. Johnson in March or April 1996 in which he sought legal advice from Mr. Johnson relating to possible changes to RJR's 1997 marketing contracts that RJR's Trade Marketing group was beginning to draft in early 1996. He did not discuss business issues or seek business advice from Mr. Johnson. (Buckler Decl., RJR's Mot., Ex. A.)

At his continued deposition Mr. Buckler testified that, although he did not recall the precise words that were used in his conversation with Mr. Johnson, or what he or Mr. Johnson were wearing that day, he did remember the topic of the conversation and the reason he consulted Mr. Johnson. (Second Buckler Dep. at 27, CC's Supp. Mem. Opp'n, Ex. 9.) Other documents that he reviewed after his deposition showed that a new net requirement for wholesale partners was announced in that time period, and in his experience, legal advice was sought in the writing of new net requirements. (*Id.* at 20-21.) Some of his notes might have been made in anticipation of the meeting, "contexts in order to frame out what I needed to discuss with Mike [Johnson] and alternative options as to the wholesale partners requirement that I was working on." (*Id.* at 97.)

## ANALYSIS

*I. CC's Motion to Strike Mr. Buckler's Declaration.*

CC argues that Mr. Buckler's declaration should be stricken under the line of authority that precludes a party from submitting an affidavit or declaration to "patch-up potentially damaging deposition testimony." *Commercial Underwriters Ins. Co. v. Aires Environmental Services, Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001), quoting *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999). However, the court will accept a contradictory supplemental affidavit if the party offers a suitable explanation such as confusion, mistake or lapse in memory for the discrepancy. *Commercial*

7

*Underwriters*, 259 F.3d at 799. Here, RJR argues, Mr. Buckler did not disclaim any knowledge of the Buckler Document at his initial deposition. Rather, Mr. Buckler recognized his handwritten notes of a conversation with attorney Michael Johnson, and testified that he sought legal advice, not business advice, from Mr. Johnson. He could not recall the date or substance of the conversation from the undated notes until those notes were put into the context of other documents.

The cases cited by CC involve situations where a party who is faced with a summary judgment motion submits an affidavit in which the party avers to significant facts about the claim that the party could not recall at deposition. *See, e.g., Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995). Such affidavits are literally incredible. Here, however, Mr. Buckler's explanation is plausible. Although CC argues that Buckler Document is a significant piece of evidence, it was one of hundreds of thousands of business records produced by RJR. Other than this motion, the Buckler Document has not been the focus of any proceedings in this case. It is not surprising that a witness would not immediately be able to place an undated, handwritten document shown to him at his deposition. It is likewise not surprising that the witness would later be able to recall the circumstances under which he wrote the document when he is able to put it into context with other business records.

CC's motion to strike Mr. Buckler's declaration is denied.

*II. RJR's Motion for Return of the Buckler Document.*

A. Is the Buckler Document is privileged?

The elements of attorney-client privilege are well established.

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

disclosure by himself or by the legal advisor, (8) except the protection be waived. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The privilege also applies to communications made by an attorney to a client that constitute legal advice or tend to reveal a client confidence. *United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990). The party asserting privilege has the burden of proving the elements. *White*, 950 F.2d at 430.

The Buckler Document is a one-page undated handwritten document on the letterhead of "MICA Management Resources," a company that gave a personnel management workshop that Mr. Buckler had attended. (Second Buckler Dep. at 92.) Mr. Buckler's Declaration and deposition, as well as the text of the document support RJR's position that the document reflects notes taken by Mr. Buckler in preparation for and during a meeting with Mr. Johnson concerning possible changes in RJR's contracts relating to the "wholesale program."[2] (*Id.* at 26, 32.) It appears that Mr. Buckler jotted some notes about issues in the proposed contracts on a piece of paper that was in his office and went to see Mr. Johnson who was in the same building to ask his advice on those issues. There is no suggestion that the Buckler Document was ever distributed to anyone else.

Communications by a client to a lawyer for advice on the legal implications of proposed contract terms are protected, as well as the advice that the lawyer gives regarding those terms. "Drafting legal documents is a core activity of lawyers, and obtaining information and feedback from clients is a necessary part of the process." *Diversity U.S. Holdings, Inc. v. Sara Lee Corp.*, No. 91 C 6234, 1994 WL 71462 at *1 (N.D. Ill. March 3, 1994)(Kocoras, J.). The attorney-client privilege protects the client's effort to obtain legal advice by identifying to the attorney the concerns that the client wants the contract language to address. *Id.* at *2.

---

[2] In order to protect confidentiality, the text of the document is not discussed.

9

CC argues that certain contract terms that are handwritten on the Buckler Document also appear on a document (Buckler Ex. 39) that CC states "relates to" a RJR 1997 Business Planning meeting held in September 1996. (CC's Supp. Mem. at 8.) CC states that the information from Ex. 39 was presented at the 1996 meeting. (*Id.*) The record does not establish that.[3] However, even assuming, *arguendo*, that the final versions of the contract terms were presented to RJR's sales staff in 1996, it is the substance of the communication between the lawyer and the client regarding the proposed terms that is protected, not the contract terms that ultimately appeared.

> First, it is important to bear in mind that the attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that disclosure would reveal confidential communications. . . .[A]lthough some of the documents appear to be drafts of communications the final version of which might eventually be sent to other persons, and as distributed would not be privileged, we see no basis in the record for inferring that AG did not intend that the drafts—which reflect its confidential requests for legal advice and were not distributed—to be confidential.

*In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2nd Cir. 1984); *accord In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1995 WL 557412 at *2 (N.D. Ill. Sept. 19, 1995)(Kocoras, J.).

Finally, the Buckler Document contains some notes under the heading "Explanation to the Field." Those notes express the view of the "Legal Dept." as to some issues, and are clearly the recording of legal advice. As such, those note reflect a communication that is clearly privileged.

---

[3] Buckler Ex. 39 appears to be a draft of a handout. Mr. Buckler recognized his handwriting on various notations on Ex. 39, but did not recall the circumstances under which he made the notes. (Second Buckler Dep. at 68.) Mr. Buckler did *not* accept CC's counsel's conclusion that Ex. 39 includes material that was a presentation that Mr. Buckler made at the September 1996 sales meeting. (*Id.* at 71-72.) He did not know whether Ex. 39 was a final document or a preparatory document. (*Id.* at 74.) At most, Mr. Buckler testified that he believed Ex. 39 to be a 1997 sales plan document, but did not know if it was a draft, a final copy or even a complete copy. (*Id.* at 83.)

B. Has RJR waived the privilege?

Interestingly, CC did not initially claim waiver as a basis for refusing to return the Buckler Document. *See* letters from CC's counsel (RJR's Mot., Exs. E, F and G). However, CC now argues that RJR waived any attorney-client privilege associated with the Buckler Document: first, by producing the Buckler Document to CC in this lawsuit; second, by failing to seek its return after Ms. Simkins' deposition; and third, in 1996 by disclosing its contents to the field. (CC's Supp. Mem. Opp'n at 3-10.)

*1. Inadvertent production.*

Recent cases from this District have relied on a balancing test to decide on a case by case basis whether the circumstances of inadvertent disclosure warrant a finding that the privilege has been waived. *Tokar v. City of Chicago*, No. 96 C 5311, 1999 WL 138814, at *1 (March 5, 1999)(Coar, J.); *Wsol v. Fiduciary Management Associates, Inc.*, No. 99 C 1719, 1999 WL 1129100, at *6 (Dec. 7, 1999)(Conlon, J.). Under this test, the court considers the reasonableness of the precautions taken to prevent the disclosure, the time taken to rectify the error, the scope of discovery, the extent of the disclosure, and the overriding issue of fairness. *Tokar*, 1999 WL 238814, *2; *Wsol*, 1999 WL 1129100, *6.

The scope of document production in this case dwarfs the production considered in other cases involving waiver. *See Tokar*, 1999 WL 238814, *2. The declaration of RJR's counsel in the *Philip Morris* Lawsuit describes a careful review of documents for privilege and a reasonable explanation of why a single copy of a one-page handwritten document embedded within a 207-page document slipped by that review. In turning over to CC the hundreds of thousands of documents that had been produced by RJR in the *Philip Morris* Lawsuit, RJR's lawyers in this case reasonably relied

11

on the document review that had been undertaken by their counterparts representing RJR in the *Philip Morris* Lawsuit. These facts demonstrate an inadvertent production in spite of reasonable efforts to safeguard privilege. These circumstances disfavor a finding of waiver.

### 2. *The time taken to rectify the error.*

CC argues that the use of the Buckler Document at Mr. Schindler's deposition approximately two weeks after the colloquy at Ms. Simkins' deposition, and the period of approximately two months between the Simkins deposition and RJR's June 8, 2001 letter support a finding of waiver.

A party that has inadvertently produced a privileged document must move promptly to rectify the error. However, what is sufficiently prompt to avoid waiver depends on the circumstances of each case. *See Tokar*, 1999 WL 138814 at *2. The Buckler Document was not used for any purpose until Ms. Simkins' deposition, so there was nothing to call this particular document to RJR's attention among the many documents used in this case. Indeed, the fact that CC withdrew its request for the documents produced in the *Philip Morris* Lawsuit suggests that the documents that had been produced were not significant enough for this lawsuit to have justified RJR's counsel in this case reviewing that voluminous production page by page. Significantly, CC did not cite the Buckler Document in its March 26, 2001 answers to RJR's interrogatories identifying documents supporting CC's Third Amended Counterclaim. (RJR's Reply Mem., Ex. J.) (See discussion *below*.)

The colloquy at Ms. Simkins' deposition quoted at length above reflects RJR's counsel's objection to the use of the Buckler Document and request that CC return the document. CC did not agree that Buckler Document was privileged, and required RJR to investigate and provide CC with additional information to support RJR's privilege claim. But in response to RJR's counsel's expressed concern about avoiding an argument that RJR was "sitting on some rights," CC's counsel

stated, "[Y]ou need to know more before you ask for it back. And certainly I would need to know more before I could agree that you could have it back." (Simkins Dep. at 459.) This occurred in the context of an intense discovery schedule. From March 23, 2001 to June 6, 2001, counsel for the parties took 31 days of depositions and appeared at 5 court hearings. (Declaration of Eric Berlin, RJR's Reply Mem., Ex. L ¶ 12.) It was not unreasonable for RJR's counsel to believe that CC's counsel was agreeing to allow RJR time to do the investigation and provide CC's counsel with the information supporting its privilege claim. (Berlin Decl. ¶ 13.)

CC's argument that RJR waived any privilege by allowing "substantive" questions about the Buckler Document at Mr. Schindler's deposition (CC's Supp. Mem. at 10) is not supported by the transcript. Mr. Schindler did not recognize the Buckler Document. CC's counsel was asked only whether he recalled *any* discussions about one matter referred to in the document, to which he responded, "No." There was no substantive discussion of any privileged conversation. (Shindler Dep. at 272-73, CC's Mem. Opp'n, Ex. 3.)

Neither Ms. Simkins nor Mr. Schindler recognized the Buckler Document. As soon as Mr. Buckler identified the document as his notes, RJR objected to any substantive discussion about the contents of the document and requested its return. In the circumstances under which this document was produced and disclosed in this case, RJR acted with reasonable promptness to rectify the error.

*3. Waiver by disclosure of the substance of the conversation in 1996.*

CC argues that any privilege about the legal advice reflected in that portion of the Buckler Document under the heading "Explanation to the Field" has been waived because that "explanation" was given by Mr. Buckler at the September 1996 sales force meeting. (CC's Supp. Mem. at 7.) However, the record does not support CC's assertion. Mr. Buckler recalled that he made one or

13

more presentations at the September 1996 meeting (Second Buckler Dep. at 41), but he did not recall what topics he spoke on. (*Id.* at 42.) The agenda for that meeting, Buckler Ex. 37, lists Mr. Buckler as attending a meeting on a different topic. (*Id.* at 61.) CC points out that Mr. Buckler wrote on Ex. 39 that the contract terms for the wholesale program were to be a "Major Discussion Topic," but CC's conclusion that, therefore, all of the contents of the Buckler Document must have been discussed (CC's Supp. Mem. at 9), does not follow. Although Mr. Buckler discussed with Mr. Johnson what explanation *was to be* given to the field (Second Buckler Dep. at 40), that fact does not prove that an "explanation" was actually given, or if given, that the legal advice was disclosed. Mr. Buckler denied that he disclosed any legal advice that he received from Mr. Johnson. (*Id.* at 130.)

CC's counsel asked Mr. Buckler at his renewed deposition what legal advice he had received from Mr. Johnson, a clearly objectionable question and expressly outside the scope of the order requiring Mr. Buckler to sit for his renewed deposition. (Tr. of July 24, 2001 at 4, RJR's Reply Mem., Ex. I.) However, CC's counsel did *not* ask Mr. Buckler whether in fact he gave an explanation to "the field" regarding the changes in the 1997 contracts and, if so, what he said.[4]

CC argues that RJR has the burden of proving that the privilege has not been waived. Mr. Buckler has denied that he ever disclosed any legal advice given to him by Mr. Johnson, and CC has not presented any evidence demonstrating that he did.

---

[4] RJR argues that the "field," consisting of RJR's sales department outside the Winston-Salem office, are within the scope of those to whom privileged information may be communicated without waiving the privilege. (RJR's Reply Mem. at 10.) However, it is not necessary to decide this issue because there is no evidence that any privileged information was, in fact, communicated to the "field."

14

### 4. Fairness.

The overriding issue in the analysis is fairness. *Advertising to Women, Inc. v. Gianni Versace S.P.A.*, No. 98 C 1553, 1999 WL 608711 at *5 (N.D. Ill. 1999)(Schenkier, M.J.), citing *Sanner v. Board of Trade of City of Chicago*, 181 F.R.D. 374, 379 (N.D. Ill. 1998)(Levin, M.J.). CC argues that the Buckler Document is "important proof that RJR engaged in discriminatory pricing," and that CC relied on the Buckler Document in preparing its Sherman Act allegations in the Third Amended Counterclaim filed on January 23, 2001. (CC's Supp. Mem. at 3.) However, CC's argument is belied by the fact that CC did not list that document in its sworn answers to RJR's interrogatories asking CC to list all documents that CC contends support those allegations. *See* CC's Obj. and Resp. to Pl's Interrogs. Relating to Count III of CC's Third Am. Ctrcl., RJR's Reply Mem., Ex. J. Those answers were served on March 26, 2001, months after CC states it had identified the Buckler Document as a "Hot Document." This fact strongly undercuts CC's arguments about "fairness."

Secondly, CC's argument that this is an important document in the proof of this case is undercut by the fact that no witness other than Mr. Buckler even recognized the document, and there is no evidence that the document or the substance of Mr. Johnson's advice was ever communicated to anyone but Mr. Buckler.

CC argues that it should be entitled to use the Buckler Document because RJR has produced another document for which it does not claim privilege, which appeared in both Mr. Buckler's and Mr. Johnson's files. That document, Ex.10 to CC's Supplemental Memorandum, is a single page undated typewritten memorandum with business information about RJR's relationship to the Wal Mart stores. It does not show either an author or a list of recipients. Contrary to CC's argument, the fact that this memorandum was present in the files of both Mr. Johnson and Mr. Buckler does not

15

refute Mr. Buckler's statement that the advice that he sought from Mr. Johnson was legal advice, rather than business advice. (Buckler Decl. ¶ 8.)

CC has not demonstrated that the Buckler Document, which no witness other than Mr. Buckler could identify, has any importance in this case except for whatever value it may have to CC to put before the finder of fact confidential legal advice from RJR's legal department. *See* Hunter Decl. ¶ 18-21. Fairness does not require that one party be permitted to introduce such evidence. On the contrary, the policy favoring candid communication between attorney and client which underlies the attorney-client privilege directs the opposite result.

## CONCLUSION

For the foregoing reasons, Cigarettes Cheaper's motion to strike Michael Buckler's declaration is DENIED, and R. J. Reynolds Tobacco Co.'s motion for return of the Buckler Document is GRANTED. Cigarettes Cheaper shall deliver to R. J. Reynolds within 3 business days all copies of the Buckler Document, including all copies contained on compact disc or database format.

**IT IS SO ORDERED.**

/s/ Geraldine Soat Brown
GERALDINE SOAT BROWN
**United States Magistrate Judge**

**DATED: October 16, 2001**