# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1174 | **DATE** | 7/16/2004 |
| **CASE TITLE** | R.J. Reynolds Tobacco Co. et al vs. Premium Tobacco Stores, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ■ Jury trial set for 9/8/2004 at 10:30 A.M..

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Cigarettes Cheaper!'s three motions for judgment as a matter of law (Docs 528-1, 531-1, & 555-1), its motion for a new trial (Doc 556-1), and its motion (Doc 554-1) to reduce the jury verdict are denied. RJR's motion for summary judgment is denied, and its motion to bar John Roscoe's damages testimony is granted in part and denied in part as discussed within our memorandum opinion. The trial of the remaining claims in this case will commence on Wednesday, September 8, 2004 at 10:30 a.m. All proposed voir dire to be submitted by August 25, 2004. Answer to pending motion (Doc 566-1) for leave to amend counterclaims is due August 2, 2004. Reply due August 9, 2004. The Court will rule by mail.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 10 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | JUL 19 2004 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | 568 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 07/16/04 date mailed notice | |
| SCT | courtroom deputy's initials | SCT mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
2004 JUL 16 PM 2: 54
FILED-CDL

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

JUL 1 9 2004

R.J. REYNOLDS TOBACCO COMPANY and GMB, INC.,    )
                                                )
                    Plaintiffs,                 )
                                                )
        vs.                                     )    99 C 1174
                                                )
PREMIUM TOBACCO STORES, INC. d/b/a CIGARETTES   )
CHEAPER; C.E.I. INTERNATIONAL, INC. d/b/a Crown )
Energy, Inc.; CANSTAR (U.S.A.) d/b/a CEI Distributors )
Tobacco Divisions; GENOVA TRACING, INC.; VARIOUS )
JOHN DOE RETAILERS; CIGARETTES CHEAPER f/k/a    )
Premium Tobacco Stores, Inc.                    )
                                                )
                    Defendants.                 )
----------------------------------------------------------------- )
CIGARETTES CHEAPER f/k/a Premium Tobacco Stores, Inc. )
                                                )
                    Counterplaintiff,           )
        vs.                                     )
                                                )
R.J. REYNOLDS TOBACCO CO.                       )
                    Counterdefendant            )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on five post-trial motions filed by Defendant-Counterplaintiff Cigarettes Cheaper! ("CC") and two motions filed by Plaintiff-Counterdefendant R.J. Reynolds Tobacco Company ("RJR"). For the reasons set forth

568

below, CC's motions are denied. RJR's motion for summary judgment is denied and its motion in limine to bar John Roscoe's damages testimony is granted in part and denied in part.

## BACKGROUND

The factual and procedural history of this case is extensive, tortuous, and set forth in previously rendered opinions, so we only briefly recap the highlights. RJR is a tobacco company that manufactures Camel, Winston, and Salem cigarettes. CC is a discount cigarette retailer owned and operated by John Roscoe and his family. At the time pertinent to this case, RJR produced Camels, Winstons, and Salems for the U.S. domestic market as well as other markets overseas, in duty-free shops, and on U.S. military bases. The parties have debated the proper moniker for the latter category of products; for simplicity's sake, we will refer to them as "parallel." In the late 1990s, CC began purchasing parallel market cigarettes and selling them at its stores within the domestic market. RJR filed suit in 1999, alleging that CC's practices amounted to unfair competition, including infringement and dilution of the Camel, Winston, and Salem trademarks.

In response to RJR's complaint, CC launched a counterclaim, alleging that RJR had engaged in antitrust activities by denying CC favorable treatment that RJR had given to its competitors. After a considerable pretrial period and plentiful motion

practice, the parties went to trial for the first time in January 2004 on both the trademark and antitrust claims. A mistrial was declared, but not before this court ruled on several motions in limine. Shortly thereafter, RJR filed a motion for summary judgment on CC's counterclaims. This ruling considers that motion as well as a motion in limine pertaining to the antitrust claims.

Before the second trial commenced, we severed the trademark and antitrust claims. The trademark portion went to trial in April 2004 and resulted in a verdict in RJR's favor on all counts. Finding that CC had profited from the cigarette sales to the tune of $3,560,002, the jury awarded RJR that amount. CC's five motions all challenge different aspects of this outcome.

## DISCUSSION

### A. CC's Motions for Judgment as a Matter of Law

CC moves for judgment as a matter of law on all of RJR's claims[1] and separately for judgment as a matter of law on the issues of trademark dilution and willfulness. In considering these motions, we must view the evidence in the light most favorable to RJR, drawing all reasonable inferences in its favor. David v. Caterpillar, 324 F.3d 851,

---

[1] CC filed two motions seeking this relief: one at the close of RJR's case-in-chief and one at the close of the presentation of evidence but before the jury reached its verdict as required by Fed. R. Civ. Proc. 50. As these motions are identical except for some additional record citations, we treat them as one.

858 (7th Cir. 2003). We cannot second-guess the jury's view of evidence that was contested; instead, we must ask whether, within the totality of the evidence, there is sufficient support for a reasonable jury to find for RJR. Id.

## 1. The "Genuineness" of the Parallel Product

CC first insists that RJR could not have shown infringement of its trademarks because the parallel market cigarettes were manufactured by RJR. Relying on the Ninth Circuit's decision in NEC Elec. v. CAL Circuit Abco, CC claims that this made the cigarettes "genuine goods bearing a true mark," which cannot be infringing. 810 F.2d 1506, 1509 (9th Cir. 1987).

CC's argument fails for two reasons. First, as we explained in our June 30, 1999, denial of CC's motion to dismiss the original complaint, we are convinced that the applicable rationale for this case is supplied by two cases from the D.C. Circuit. See Lever Bros. Co. v. U.S., 981 F.2d 1330 (D.C. Cir. 1993) ("Lever II"); Lever Bros. Co. v. U.S., 877 F.2d 101 (D.C. Cir. 1989) ("Lever I"). The Lever cases held that goods intended for foreign sale that are physically different from those sold within the United States are not genuine goods from the perspective of American consumers; as a result, their sale can violate the provisions of the Lanham Act. See Lever II, 981 F.2d at 1338; Lever I, 877 F.2d at 111. RJR produced evidence as to each brand that physical differences were present between domestic and parallel cigarettes. For

-4-

example, parallel Camels and Winstons lacked loyalty program materials, parallel cigarette packages indicated that the product they contained was tax-exempt and not for sale within the United States, and parallel cigarette packaging differed in color and style from its domestic counterpart. Thus, the fact that RJR manufactured the parallel product does not mandate judgment for CC.

Second, even if we were to follow the Ninth Circuit's lead on the issue of when goods are "genuine," we are not persuaded that the NEC court's reasoning would result in a victory for CC. In NEC, a foreign manufacturer attempted to make its U.S. subsidiary the exclusive source of NEC goods within the United States. When an importer bought NEC products overseas and resold them in this country in direct competition with NEC's subsidiary, the foreign parent brought suit under U.S. trademark law. Thus, the parent had no quarrel with the sale of its products within the United States, as long as the product came only from its affiliate. The Ninth Circuit found this activity an attempt to artificially insulate the market to the detriment of American consumers, as evidenced by the court's stinging rebuke of the trademark holder and its parent company at the close of the opinion. Id. at 1511. As a result of the tactic of limiting consumer choices by invoking a law intended to foster honest competition, the equities in NEC clearly weighed against the trademark holder.

In this case, by contrast, RJR manufactured parallel product exclusively for non-domestic markets and made no attempt to reintroduce the goods into the domestic market through an exclusive source. This difference distinguishes <u>NEC</u> and bolsters our conviction that the correct analysis for these circumstances is provided by the <u>Lever</u> cases. RJR has shown enough physical differences between the domestic and parallel products to allow a conclusion that the parallel cigarettes were not "genuine" goods for purposes of an infringement claim. Thus, CC is not entitled to judgment as a matter of law on this basis.

## 2. Lack of Material Differences

CC next contends that, if differences were shown, they were not material to the purchasing consumer. Without material differences between similarly marked goods, the protections of the Lanham Act do not engage. <u>See</u> <u>Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.</u>, 982 F.2d 633, 637, 639-41 (1st Cir. 1992).

RJR presented a significant amount of evidence that the differences between domestic and parallel product were significant to U.S. consumers. Examples include consumer complaints in phone calls or letters to RJR and the testimony of Nancy Montgomery that these represented the proverbial tip of the iceberg, in that in her experience only a percentage of unhappy customers will take the time to call or write the company.

In addition, RJR showed that purchasers who discovered differences in a product after leaving a CC store tried to return the product because it was not what they wanted. It is reasonable to infer from this behavior that if the same consumers had noticed the difference before the sale was consummated, they would have chosen not to purchase the product in the first instance.

RJR also presented results of a survey of Camel smokers, which indicated that the lack of loyalty materials in parallel product was significant to the purchasing decision of 27% of that group. CC contends that the survey was fatally flawed and thus that its results cannot be credited. However, the creator and administrator of the survey was effectively cross-examined on the shortcomings CC perceived, and CC presented its own expert to attempt to discredit the survey methodology and results. Faced with all of this, the jury still found in favor of RJR, a decision we must assume meant that the jury believed the survey indicated that the lack of loyalty materials was relevant to Camel purchasers. CC may disagree with the jury's decision, but that is insufficient to warrant judgment as a matter of law.

Finally, CC draws attention to the terms of a licensing agreement between RJR and its overseas affiliate, RJR International, which states that parallel product must be "of at least comparable quality" to its domestic counterparts. While this language cuts against the idea of vast differences between parallel and domestic product, it does not

eliminate the possibility of a difference that is material to consumers, particularly in the areas on which RJR focused attention. Moreover, CC made the jury aware of the agreement and its provisions. We must assume that they took it into account in their deliberations and decided it was not strong enough to counteract the aforementioned differences and their effect on domestic consumers. This choice was well within the scope of reasonable interpretations of the evidence presented. Thus, CC's motion for judgment as a matter of law on all claims fails.

*3. Dilution*

Next, CC avers that the jury's verdict on dilution cannot stand because the marks in question are not famous and there was no blurring of the marks. Neither of these grounds has merit.

The Lanham Act lays out several factors for deciding that a mark is famous. 15 U.S.C. § 1125(c). Among them are the duration and extent of the use of the mark in connection with the goods in question, the duration and extent of advertising and publicity of the mark, the geographical extent of the trading area in which the mark is used, and the degree of recognition of the mark in the trading areas and channels of trade used by RJR and CC. RJR presented evidence establishing each of these factors. Furthermore, RJR and CC operate in related markets, a factor that is particularly significant to a determination of fame. See Syndicate Sales, Inc. v. Hampshire Paper

Corp., 192 F.3d 633, 640 (7th Cir. 1999). Several jurors were current or former smokers, and we must assume that they brought their knowledge of the relevant market to bear in making their decision. RJR's evidence fully supported a conclusion that the Camel, Winston, and Salem trademarks are famous marks, particularly among smokers. See id. at 640-41.

CC challenges a finding of blurring on the grounds that the marks were placed on product by RJR, not CC, so any differences and consequent blurring were caused by RJR's actions, not CC's. This argument ignores the fact that RJR's actions included exporting the cigarettes, creating a natural bright line: a geographic border. CC unilaterally removed this inherent barrier to the two versions being offered to the same consumers in the same setting. Indeed, CC emphasized at trial that both versions were simultaneously available to CC consumers, without any guidance as to the existence of or reasons for differences between them. These products were never intended to be side by side; the blurring that results from placing them thus cannot be discounted by CC's arguments that both products originated from RJR. We find the jury's conclusion that the marks were diluted by CC's actions is both reasonable and supported by the evidence adduced at trial.

*4. Willfulness*

CC rounds out its opposition by disputing the jury's finding of willfulness. RJR's primary response to this challenge is its contention that CC has waived it. RJR points out that willfulness was not discussed in either of CC's pre-verdict motions for judgment as a matter of law, although both motions directly addressed RJR's dilution claim. Fed. R. Civ. Proc. 50(a)(2) provides that a party can move for judgment as a matter of law at any time before a case is submitted to the jury; motions must specify the law and the facts on which the movant is entitled to the requested judgment. The purpose of the rule is to allow the non-movant an opportunity to supplement its evidentiary presentation before the jury is given the case. See Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1364 (7th Cir. 1996).

If the court does not rule on the motion before the jury reaches a decision, the movant may renew the motion after the verdict comes down. Fed. R. Civ. Proc. 50(b). As the phrase implies, the ability to make a "renewed" motion must be predicated on the filing of an initial motion in which each legal and factual ground for relief must be specifically laid out. Fed. R. Civ. Proc. 50(a)(2). If a ground is not included in a motion prior to the rendering of the verdict, the moving party waives the ability to challenge whether that issue should have been presented to the jury for consideration. See Zelinski v. Columbia 300, Inc., 335 F.3d 633, 638 (7th Cir. 2003); McCarty v.

Pheasant Run, Inc., 826 F.2d 1554, 1555-56 (7th Cir. 1987). Although CC is correct that willfulness has been brought up in a variety of contexts over the protracted lifetime of this case, this does not undo its omission from both pre-verdict motions for judgment as a matter of law. The purpose of Rule 50(a) is to alert a party to deficiencies in its proof while there is yet a possibility to cure them. CC's late assertion of problems it perceived with RJR's case on willfulness completely defeats this purpose, and we thus agree with RJR that CC has waived its willfulness argument.

Even if CC had properly preserved a challenge to a finding of willfulness, it would not lead to the relief requested. CC argues that there is no basis to deem the dilution willful because its principals had no intent to dilute the trademarks, nor did they subjectively believe that their conduct was illegal. As the jury was instructed, willful dilution can be found by showing either intent to cause dilution or to trade upon RJR's reputation. CC's arguments as to the former are persuasive, but the remainder of its presentation does little to disprove the latter.

There is abundant evidence in this case that CC intentionally sought out RJR products for the express purpose of attracting RJR smokers; this is one of the grounds it advances as indicative of good faith. However, the same evidence just as easily allows an inference that CC obtained the parallel product intending to lure customers via their brand loyalty, a powerful incarnation of RJR's reputation within the applicable

-11-

market. CC's deliberate offering of non-genuine goods to these consumers trades directly upon consumer reliance in RJR's reputation for providing consistent domestic product. Further supporting an inference of CC's intent to trade upon RJR's reputation, the jury heard of such practices as CC's cloaking the parallel cigarettes with the description "Specially Priced Product." That CC chose to use this term rather than indicating to its consumers[2] that the product was derived from the international market, that it was not intended for domestic sale, or any of the differences attendant to that distinction further supports the idea that CC was counting on its consumers to make their decisions based primarily on their prior knowledge of RJR brand names and the attributes they associated with those names. Thus, even if CC had not waived its opportunity to challenge the sufficiency of RJR's evidence on willfulness, it would not be entitled to judgment as a matter of law on that issue.

Taking the totality of the evidence in a light most favorable to RJR, we conclude that the jury had a sufficient foundation on which to base its verdicts for RJR on all claims, including dilution and willfulness. Accordingly, all of CC's motions for judgment as a matter of law are denied.

---

[2] This is in sharp contrast to the immediate explanation CC provided to its store managers about the cigarettes and their origins.

## B. CC's Motion for a New Trial

Another of CC's motions seeks a new trial pursuant to Fed. R. Civ. Proc. 59(a). The rule allows a district judge to grant a new trial on all or some of the issues that have been tried "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." A motion for new trial should succeed only where a verdict is against the manifest weight of the evidence presented at trial. Lowe v. Consolidated Freightways of Delaware, Inc., 177 F.3d 640, 641 (7th Cir. 1999). Rule 59(a) is not intended to allow parties to merely relitigate old matters or to present the case under new theories; rather, a motion for a new trial not predicated on the discovery of new evidence is intended to correct manifest errors of law or fact. See Cefalu v. Village of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000); Mogi Trading, 100 F.3d at 1367. In considering the motion, we must view the evidence in the light most favorable to RJR, the party who prevailed. See Carter v. Chicago Police Officers, 165 F.3d 1071, 1079 (7th Cir. 1998).

CC bases its motion on several pretrial in limine rulings made by this court. According to CC, our exclusion of evidence they sought to present allowed RJR to gain unfair advantage in the form of unanswered arguments. Fed. R. Civ. Proc. 61 provides that no error in the exclusion of evidence will warrant a new trial unless refusal to allow another trial appears to the court to be inconsistent with substantial justice. The

Seventh Circuit has interpreted this rule to mean that evidentiary errors[3] merit a new trial only if the probability that they affected the trial's outcome is significant. Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1048 (7th Cir. 2000).

CC points to four areas where it contends our rulings significantly affected the outcome of the trial: 1) exclusion of evidence of reliance on counsel; 2) exclusion of testimony regarding the legality of reimportation of parallel cigarettes; 3) the absence of a need to deter CC from making future sales; and 4) arguments regarding unjust enrichment of RJR by a potential award of profits. We are unconvinced that any of the rulings we made impacting these areas were in error or that the evidence they excluded would have significantly affected the jury's decision.

With respect to reliance on counsel, CC willingly chose to assert its attorney-client privilege rather than allow discovery into conversations with counsel. In addition, since the attorney CC consulted was not its retained trademark specialist, there is no reason to think that the fact of any conversation would have made a difference in the jury's finding of willfulness. As for the issue of legality of reimportation, the fact that a given course of conduct complies with one set of laws does not mean that the same behavior cannot violate another set. Whether CC took

---

[3] We assume, for purposes of this motion only, that our rulings were in error. Without this assumption, CC's argument stalls at the starting gate.

pains to comply with customs and tax law does not affect the violations of the trademark and unfair competition issues presented to and decided by the jury. One simply has nothing to do with the other. The only difference this evidence could have made, as we noted in our original ruling, would have been to confuse and mislead the jury. Consequently, it does not lead CC to a new trial in which they would be given the opportunity to introduce this prejudicial material.

Finally, with regard to the areas of purported unjust enrichment of RJR and need for deterrence, the discussion of these topics above is just as pertinent to our decision here. As we noted in the ruling on RJR's unjust enrichment, the circumstances of this case simply will not support unjust enrichment with respect to RJR. Even if RJR had been unjustly enriched, as between CC, the willful infringer and dilutor, and RJR, the lawful mark holder and manufacturer of the goods, the equities would still favor RJR. Furthermore, as the case law discussed in conjunction with the next motion makes clear, this weighting in favor of RJR and CC's own unjust enrichment are sufficient to warrant an award of profits even absent a need for deterrence. Thus, evidence on that issue would not have affected the ultimate outcome of the case.

We are not left with any conviction that the jury made a mistake as a result of our exclusion of evidence, let alone a definite and firm one. Consequently, CC's motion for a new trial is denied.

## C. CC's Motion to Reduce the Jury's Verdict

Lastly, CC contends that if RJR's trial victory is allowed to stand, the amount of profits awarded was excessive and must be reduced. In pertinent part, the Lanham Act provides that a trademark registrant whose rights under 15 U.S.C. § 1125(a) are violated is entitled to recover a defendant's profits. 15 U.S.C. § 1117. An award of profits can have several foundations, such as unjust enrichment of the defendant, deterrence of future misbehavior, and willful violation of the registrant's rights. See Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 941 (7th Cir. 1989). These underpinnings can be used in combination, but they need not be; a successful showing on one theory can be enough to justify an award of profits. See id.

Contrary to CC's arguments in its motion, a finding of harm is not necessary to an award of profits. Id. Unjust enrichment will suffice to support disgorgement of ill-gotten gains. At trial, RJR presented evidence that CC was unjustly enriched by its sale of parallel product. The cigarettes at issue were not intended for sale within the domestic market. As discussed above, the jury reasonably concluded that CC's actions represented infringement and willful dilution of RJR's trademarks, either of which will support an award of profits. As between an owner of a legitimate trademark and a willful violator of trademark rights, equity sides with the former in determining who should retain the financial spoils of sales that were never meant to be. See Louis

<u>Vuitton, S.A. v. Lee</u>, 875 F.2d 584, 589-90 (7th Cir. 1989). It is also no small measure of reasonableness that the jury derived the amount of profits awarded not from RJR's calculations but from a figure reached by CC's accounting expert. Finally, CC's conduct in pursuing this activity, though not so egregious as to be in bad faith, was not a model of honorable business practices.

CC's alternative position that the award should be reduced to the value of the Camel Cash RJR supplied to complaining customers is not a viable option. It might fare better if we were dealing with a damage model as opposed to a profits model, since it represents expenses incurred by RJR as a direct result of CC's conduct. But the focus in a profits scenario is on what the defendant gained, not what the plaintiff lost. We do not see any reason to shift that focus here.

Given the circumstances of this case, we do not find that the amount of recovery is excessive. While CC is correct that the Lanham Act affords a court discretion to reduce an award of profits, we do not think an exercise of that discretion is appropriate in this case.

### D. RJR's Motion for Summary Judgment and Motion in Limine

RJR filed its motion for summary judgment almost immediately following the declaration of a mistrial. In essence, it argues that CC cannot show any hard evidence of the elements of its Robinson-Patman claim or that RJR caused CC any compensable

damage through its allegedly anticompetitive activities. Without this evidence or the "ill intent" evidence we excluded from CC's case in chief, says RJR, the only possible outcome is a judgment in its favor. We disagree that there is no genuine issue of material fact on any of the elements comprising CC's counterclaims, so summary judgment is not warranted; the case must proceed to trial.

RJR's motion for summary judgment does not carry the day, but it resurrects an issue that the mistrial prevented us from reaching. As part of its presentation on the issue of damages, CC offers its founder, John Roscoe. A motion in limine challenging inclusion of Roscoe's testimony was denied as moot after the mistrial. However, RJR's present summary judgment motion raises many of the same challenges to admissibility of Roscoe's expert report and testimony that would ultimately flow from it, so we will consider the issue at this juncture.

Because Roscoe is offered as an expert on the issue of damages, Federal Rule of Evidence 702 and Daubert v. Merrill Dow provide the framework for our analysis. Rule 702 allows an expert to testify regarding knowledge he or she has that "will assist the trier of fact to understand the evidence or to determine a fact in issue." The knowledge involved must be "more than subjective belief or unsupported speculation." Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993). It must be "'a body of known facts or [] any body of ideas inferred from such

facts or accepted as truths on good grounds.'" Id., quoting Webster's Third New Int'l Dictionary 1252 (1986). To be admissible, an expert's testimony must be based on valid reasoning or methodology that can be applied to the facts in issue in a case. Id. at 592-93, 2796.

Roscoe's calculations suffer from two primary and insurmountable flaws. First, they fail to take into account any harm or impediment to CC's growth from any source other than RJR, such as logistical considerations, market fluctuations, supply issues, varying demand for the product, and the like. Calculations of damages that "fail to correct for salient factors, not attributable to the defendant's misconduct, that may have caused the harm of which the plaintiff is complaining do not provide a rational basis for a judgment." Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic, 152 F.3d 588, 593 (7th Cir. 1998); see also Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S. Ct. 574, 579 (1946) (emphasizing that antitrust damages cannot be awarded for injury that is attributable to causes other than the defendant's misconduct). Second, the benchmark achievement levels, whether in sales of RJR products or number of operating CC stores, are in no way connected to any concrete factual basis. These numbers are not derived from any valid reasoning or methodology. Rather, they are conjured virtually out of thin air, and the damage calculations flowing from them will not provide the jury with any information germane

to the decisions they will be asked to make. Two other courts faced with similarly deficient expert reports have reached like conclusions, and we find their reasoning well-founded and persuasive. See American Booksellers Assoc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031 (N.D. Cal. 2001); Intimate Bookshop, Inc. v. Barnes & Noble, Inc., 2003 WL 22251312 (S.D.N.Y. Sept. 30, 2003).

In determining admissibility of expert testimony, a court must also assess whether the testimony is sufficiently rooted in the facts of the case at issue to enable it to assist the jury's resolution of a factual dispute. Daubert, 509 U.S. at 591, 113 S. Ct. at 2795-96. If the applicable data and the proffered opinion are separated by an analytical chasm, it cannot be bridged solely by the expert's say-so, and the expert opinion will not support a jury verdict. General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. CT. 512, 519, 139 L.Ed.2d 508 (1997); Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242, 113 S. Ct. 2578, 125 L.Ed.2d 168 (1993). Although Roscoe has a long and varied history in tobacco retailing and doubtless has obtained a level of expertise beyond that of an average person, he offers no application of that expertise that could shore up assumptions upon which his damage calculations rest. See, e.g., Damages Analysis of John Roscoe, ¶¶ 16, 18, 19, 20, 26-34, 35-43. Instead, the only foundation he provides for his basic premises is his firm belief, based on his vast experience, that they are true and accurate. While we do

not doubt the depth of his conviction, the chasm between his opinion and the ascertainable facts of this case remains. The jury would be in precisely the same position after hearing his opinion as they were before, and it will not put them any closer to resolution of the issues of the case. Accordingly, the calculations Roscoe presents in his report will not be admitted at the upcoming trial.[4]

## CONCLUSION

Based on the foregoing analysis, CC's three motions for judgment as a matter of law, its motion for a new trial, and its motion to reduce the jury verdict are denied. RJR's motion for summary judgment is denied, and its motion to bar John Roscoe's damages testimony is granted in part and denied in part as discussed within our memorandum opinion. The trial of the remaining claims in this case will commence on Wednesday, September 8 at 10:30 am. All proposed voir dire to be submitted by August 25, 2004.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: ⎣JUL 1 6 2004

---

[4] As Roscoe's report contains information on issues other than that discussed herein, we offer no opinion of the admissibility of the remaining portions at this time.