Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1174 | **DATE** | 2/8/2005 |
| **CASE TITLE** | R.J. Reynolds Tobacco Co. et al vs. Premium Tobacco Stores, Inc. et al | | |

**DOCKET ENTRY TEXT:**

**ENTER MEMORANDUM OPINION:** RJR's motion for prejudgment interest and to set a postjudgment interest rate is granted. RJR is awarded costs in the amount of $117,855.23. All matters in controversy having been resolved, final judgment is entered. (Mailed notices.)

■ [ For further detail see attached order.]

| | Courtroom Deputy Initials: | SCT |
|---|---|---|

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY and GMB, INC., | ) |
| Plaintiffs, | ) ) ) ) |
| vs. | ) 99 C 1174 ) |
| PREMIUM TOBACCO STORES, INC. d/b/a Cigarettes Cheaper!; C.E.I. INTERNATIONAL, INC. d/b/a Crown Energy, Inc.; CANSTAR U.S.A.), INC. d/b/a CEI Distributors Tobacco Division; GENOVA TRADING, INC.; VARIOUS JOHN DOE DISTRIBUTORS; and VARIOUS JOHN DOE RETAILERS | ) ) ) ) ) ) ) |
| Defendants. | ) |
| CIGARETTES CHEAPER! f/k/a Premium Tobacco Stores, Inc., | ) ) |
| Counter-Plaintiff, | ) |
| vs. | ) |
| R.J. REYNOLDS TOBACCO COMPANY, | ) ) |
| Counter-Defendant. | ) |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on 1) the motion of Plaintiffs-Counterdefendants R.J. Reynolds Tobacco Company and GMB, Inc. (collectively referred to as "RJR") to amend the judgment entered on November 15, 2004, to include

prejudgment interest and a postjudgment interest rate, and 2) RJR's bill of costs. For the reasons set forth below, the motion for prejudgment interest and a postjudgment interest rate is granted, and RJR is awarded costs in the amount of $117,855.23.

## BACKGROUND

R.J. Reynolds Tobacco Company is a manufacturer of cigarettes; GMB, Inc. is the owner of the trademarks Winston, Camel, and Salem that identify particular products made by R.J. Reynolds Tobacco Company. In 1999, RJR sued Defendant-Counterplaintiff Cigarettes Cheaper! ("CC"), then known as Premium Tobacco Stores, Inc., for infringement of the Winston, Camel, and Salem trademarks through CC's sale of gray market products bearing those marks. CC counterclaimed, alleging that RJR had violated federal antitrust laws throughout its relationship with CC.

In 2004, the main claim and the counterclaim were severed for trial purposes. In the trademark trial, the jury found in favor of RJR and awarded $3,560,002 in CC's profits to RJR, finding that amount to represent the revenue CC gained from the sales of the infringing product. The jury in the trial of the antitrust counterclaim also found for RJR.

As the prevailing party, RJR has filed a bill of costs, claiming $147,321.99 in various expenses related to the suit as a whole. In addition, RJR seeks to add an

amount representing prejudgment interest to the award given in the trademark trial and requests that we set an interest rate to apply after judgment is entered.

## DISCUSSION

### A. Motion for Prejudgment Interest and a Postjudgment Interest Rate

*1. Prejudgment Interest*

RJR moves for $1,313,706 in interest on the $3,560,002 awarded at the close of the trademark infringement trial, relying on the presumption in this circuit that an award of prejudgment interest is appropriate when violations of federal law are shown. See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989). In response, CC contends that because the award was a disgorgement of CC's profits rather than actual damages, prejudgment interest is not available. According to CC, the money at issue did not belong to RJR until the jury rendered its verdict, so RJR could not lose the use of those funds while the suit was pending.

CC is undoubtedly correct that, all things being equal, RJR would not have had the $3,560,002 at its disposal because it would not be selling the gray-market goods that were the source of those funds. Furthermore, it is true that the most common circumstances in which prejudgment interest is awarded are cases in which a party is compensated for actual damages. See, e.g., Monessen Southwestern Ry. Co. v. Morgan, 486 U.S. 330, 335, 108 S. Ct. 1837, 1842 (1988); American Nat'l Fire Ins.

Co. v. Yellow Freight Systems, Inc., 325 F.3d 924, 928 (7th Cir. 2003); R.L. Coolsaet Construction Co. v. Local 150, International Union of Operating Engineers, 177 F.3d 648, 660-61 (7th Cir. 1999). However, the case law does not support the proposition that prejudgment interest is available only in that type of setting. "Prejudgment interest is designed not only to fully compensate the victim, but also to prevent unjust enrichment." Trustmark Life Ins. Co. v. University of Chicago Hospitals, 207 F.3d 876, 885 (7th Cir. 2000). If prejudgment interest were not available when profits are disgorged, a tortfeasor would be allowed to profit from the wrong inflicted on the victim. In re Oil Spill by Amoco Cadiz, 954 F.2d 1279, 1332 (7th Cir. 1992). To allow such a result would undermine one of the primary goals of the Lanham Act: to prevent infringement from being a financially attractive way of conducting business. See Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 744 (7th Cir. 1985). This is true even where, as here, the victim never would have realized the infringer's profit. See McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 569 (7th Cir. 2003). If wrongdoers were allowed to keep the interest made off of ill-gotten gains achieved through infringement, disgorgement of net profits alone would be insufficient to remove the financial incentive to respect others' intellectual property rights, particularly in a case where both profit amounts and interest potential are in the millions of dollars. See id. at 568. Although McRoberts involved copyright

infringement, the rationale it sets out is equally applicable to trademark cases such as this one. Significantly, the court in McRoberts affirmed the imposition of prejudgment interest on the award of profits. See id. at 572-73; McRoberts Software, Inc. v. Media 100, Inc., No. IP 99-1577-C-M/S (S.D. Ind. Apr. 23, 2002) (order granting, inter alia, prejudgment interest).

In addition, CC's argument is premised on the notion that RJR's claim to the $3,560,002 arose only at the time of the verdict. This assumption is erroneous. Prejudgment interest begins to accumulate on the date that the claim accrues. See American Nat'l Fire Ins., 325 F.3d at 935. The figure the jury awarded was based on the testimony of Robert Mazur, CC's chief financial officer, regarding the net profits CC garnered as of early 2000, when the gray-market sales stopped. In the eyes of the law, CC's obligation to pay that amount to RJR immediately began at that point, not once the trial had culminated. See Amoco Cadiz, 954 F.2d at 1331 (noting that, for prejudgment interest purposes, "once there is a judgment the obligation is dated as of the time of the injury"). To put RJR in the position that it would have been if it had been paid immediately, prejudgment interest is necessary. See American Nat'l Fire Ins., 325 F.3d at 935. In other words, RJR did lose the use of the profits that CC made as of the time of sale and must now be compensated for the lost time value of those profits in order to be made whole. See In re Milwaukee Cheese Wisconsin, Inc., 112

F.3d 845, 849 (7th Cir. 1997); Partington v. Broyhill Furniture Indus., Inc., 999 F.2d 269, 274 (7th Cir. 1993).

CC also contends that an award of prejudgment interest in this case would represent a windfall to RJR or a penalty that is explicitly prohibited by the Lanham Act. 15 U.S.C. § 1117(a). A properly calculated award of prejudgment interest, no matter how large it is, cannot be punitive. See Milwaukee Cheese, 112 F.3d at 849. Nor can it be considered a windfall, as "it is simply an ingredient of full compensation that corrects judgments for the time value of money." In re P.A. Bergner & Co., 140 F.3d 1111, 1123 (7th Cir. 1998).

CC also claims that RJR waived its ability to seek prejudgment interest by failing to include it in a list of items in an August 2000 stipulation. Waiver is an intentional act whereby a party relinquishes a known right. See Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1275 (7th Cir. 1996). Even if the omission of what, as discussed above, is a component of the profits that were specifically named in the stipulation could be extrapolated to be a willing abandonment of the ability to seek interest, the stipulation served only to amend the request for damages in the complaint in effect at that time. That complaint was superseded by the Third Amended Complaint, filed after the parties entered into the stipulation, which left the door open to unnamed forms of relief. See, e.g., Massey v. Helman, 196 F.3d 727,

735 (7th Cir. 1999). Accordingly, we do not accept CC's contention with respect to waiver of interest awards, and we conclude that RJR is entitled to prejudgment interest on the funds awarded.

Although CC has challenged only the propriety of awarding interest without contesting RJR's method of calculating the requested amount, we briefly examine the approach to the final figure because it is such a sizable amount. The time period chosen for calculation is the 1999 calendar year, although the evidence at trial showed that the period of gray market sales stretched from April 1998 to around March 2000. 4/26-5/5 Trial Tr. at 867, ll. 14-17; 928, ll. 12-16; 971, ll. 2-7. Despite the fact that the amount of revenue generated in the three or so months of 2000 is thus overaccounted for, the effect of RJR's decision to forego the interest that would have accrued on the profits made in the eight months of 1998 surely reestablishes the equilibrium. The calculation applies the prime rate, which is required in the absence of a refined process of finding a more suitable rate. See First Nat. Bank of Chicago v. Standard Bank & Trust, 172 F.3d 472, 480 (7th Cir. 1999). Finally, the interest applied is permissibly compounded. See Cement Div., National Gypsum Co. v. City of Milwaukee, 144 F.3d 1111, 1116 (7th Cir. 1998); see also Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 437 (7th Cir. 1989). Based on all these considerations, we conclude that the $1,313,706 requested is reasonable and award that amount to RJR.

*2. Postjudgment Interest Rate*

The second aspect of RJR's motion requests us to set a postjudgment interest rate of 2.47% compounded annually from the date of entry of final judgment to the date that the judgment is ultimately paid. CC does not quarrel with this request, and it is accordingly granted. Interest shall accrue according to this method of calculation on the $4,873,708 (the amount of the jury's award plus prejudgment interest). See, e.g., Bancamerica Commercial Corp. v. Mosher Steel, 103 F.3d 80, 82 (10th Cir. 1996). This calculation shall apply as of November 15, 2004, the date that judgment was entered on the jury's verdict, until the date that the judgment is paid. See Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 585 F.2d 821, 845-47 (7th Cir. 1978).

**B. Bill of Costs**

Lastly, we turn our attention to RJR's bill of costs. A prevailing party should be awarded costs other than attorneys' fees "unless the court directs otherwise." Fed. R. Civ. Proc. 54(d)(1). The court has broad discretion in determining whether and to what extent to award costs, but there is a strong presumption that the prevailing party will be awarded costs. Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 945 (7th Cir.1997). The district court should award costs that are a type recoverable under statutory authority, are "necessary to the litigation," and are for a reasonable amount. Id.; see also 28 U.S.C. § 1920.

Application of these principles to the amounts RJR claims reveals two overcharges. First, the supporting documentation does not provide a sufficient justification for the numerous instances where RJR incurred additional costs for expedited transcripts or daily copy of depositions and trial proceedings. The offhand reference to "the pace of discovery and existence of overlapping issues" within the declarations filed in support of the bill of costs is not enough to establish that this cost is reasonable or necessary. Furthermore, there is no basis at all to conclude that daily copy was reasonable and necessary throughout the six or so weeks of trial, where the expense incurred was oftentimes more than double the standard rate. Lack of justification that the accelerated materials were necessary to the case and not simply for the convenience of counsel restricts RJR to recouping only the amount calculated using the Judicial Conference rate for an ordinary transcript, or $3.30 per page.

Second, in calculating the expenses for deposition transcripts, RJR erroneously applied the maximum rates adopted by the Judicial Conference in September 2002. Local Rule 54.1(b) specifies that the rates used to calculate costs are those in effect at the time a deposition was taken. See Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 455 (7th Cir. 1998). Our discussion above regarding increased costs incurred for expedited production applies here as well, so the maximum rate that can apply to the

deposition transcripts generated during the discovery process in this case is $3.00 per page.

Applying these adjustments to the data supplied by RJR, we conclude that the amount of costs that can be deemed reasonable and necessary in this case totals $117,855.23, and we accordingly award that figure.

## CONCLUSION

Based on the foregoing analysis, RJR's motion for prejudgment interest and to set a postjudgment interest rate is granted. RJR is awarded costs in the amount of $117,855.23.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: FEB - 8 2005